UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| CRAIG R. SUMTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV416-109 |
| CREIGHTON R. HUSSEY, | ) | |
| QUALITY PROJECT | ) | |
| MANAGEMENT, LLC, | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

In *Sumter v. Quality Project Management,* LLC, CV416-108 (S.D. Ga. May 10, 2016), *pro se* plaintiff Craig Sumter sued Quality Project Management, LLC (QPM), claiming that QPM employee Creighton Hussey "physically attacked [him] on October 19, 2013 in Plaintiff's apartment while in Atlanta Georgia for work, under the auspices of [QPM]." Doc. 1 at 1-2. Suing only QPM (in CV416-108), Sumter alleges that QPM is vicariously liable for Hussey's actions. *Id.* at 1.

But in a second lawsuit, Sumter sued Hussey personally, and on pretty much the same facts. *Sumpter v. Hussey*, CV416-109, doc. 1 (S.D. Ga. May 10, 2016). The Court thus consolidated CV416-108 into CV416-

109 -- sparing him two filing fees. It also granted his motion to proceed *in forma pauperis* (IFP), then ordered him (since he was an inmate when he filed this case) to return the required Prison Litigation Reform Act ("PLRA") forms, 28 U.S.C. § 1915(a)(2). He has complied, (CV416-109, docs. 5 & 6) and, upon preliminary screening,[1] the Court concludes that Sumter has established subject matter jurisdiction plus personal jurisdiction over Hussey, but he states no claim against QPM or John Doe. Further, the Northern District of Georgia is a preferable venue for all of Sumter's claims, so the Court transfers the case there. Rather than

---

[1] The PLRA requires federal courts to conduct early screening of all suits filed by prisoners or detainees for the purpose of identifying claims that are subject to immediate dismissal because they are frivolous or malicious, fail to state a claim for relief, or seek monetary damages from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A (which applies to prisoner/detainee complaints against governmental entities or officials, whether plaintiff is proceeding IFP or has paid the filing fee); 28 U.S.C. § 1915(e)(2)(B) (imposing the same dismissal obligation as to any case filed IFP, whether by a prisoner/detainee or any other "person"); 42 U.S.C. § 1997e(c)(1) (imposing the same dismissal obligation as to "any action brought with respect to prison conditions"). On initial screening of a prisoner complaint, only "cognizable claims" may be allowed to proceed. 28 U.S.C. § 1915A(b).

All three statutory provisions contemplate the dismissal of non-cognizable claims prior to service of process upon any defendant. *See* § 1915A (requiring screening "before docketing if feasible or . . . as soon as practicable after docketing"); § 1915(e)(2) (requiring dismissal "at any time" the court determines the suit to be factually or legally insubstantial); and § 1997e(c)(1) (requiring dismissal of insubstantial claims on the court's "own motion"). But here no prison conditions or government officials are sued, so review is under 28 U.S.C. § 1915(e)(2)(B). Sumter must pay the Court's $350 filing fee under the PLRA's "installment" plan implemented below. He is not subject to the PLRA's exhaustion requirement, however, since he is not suing his jailers or any other state actors.

rule on Sumter's claims piecemeal, however, the Court defers recommending final disposition on any claims to allow review after transfer.

## I. JURISDICTION & VENUE

Before it can pass on Sumter's claims, this Court

> must have at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). The party asserting jurisdiction has the burden of establishing that their cause lies within this limited grant of jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). For actions brought under 28 U.S.C. § 1332, the burden is on the party seeking federal jurisdiction to demonstrate that diversity exists by a preponderance of the evidence. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011). A Plaintiff must plead facts that support the existence of federal diversity jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Las Vistas Villas, S.A. v. Petersen*, 778 F. Supp. 1202, 1203 (M.D. Fla. 1991).

*Lawrence v. Wells Fargo Bank, N.A.*, 2016 WL 7013528 at * 2 (S.D. Ga. Nov. 4, 2016); *see also id.* (for diversity, no defendant can be a citizen of the same state as any plaintiff and the amount in controversy must exceed $75,000); *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012) ("Diversity jurisdiction is determined at the time the complaint was filed.").

## A. Subject Matter Jurisdiction

Sumter has filed a consolidating, Amended Complaint in which he pleads diversity jurisdiction and adds a "John Doe" defendant. Doc. 7 at 1-2. He sues Hussey for state-law torts (assault, battery, stalking, invasion of privacy, etc.) that occurred in the Atlanta, Georgia area. *Id.* at 4 ("Mr. Hussey justifies his presence in Atlanta by bidding for work trips in the area but his true intent has been to stalk plaintiff."); *see also id.* ¶ 6 ("On two occasions Mr. Hussey attempted to persuade Plaintiff to move out of Atlanta, once threatening his life"). Plaintiff sues QPM because Hussey came to Atlanta while employed by QPM. He otherwise does not allege that Hussey was acting within the scope of QPM's employment. *Id.* at 3. Sumter initially sought $125,000, doc. 1 at 6, but now wants $6,125,000 from all three defendants. *Id.* at 14. That meets the $75,000 requirement.

That leaves the residency requirement. Sumter is incarcerated within this judicial district (Wheeler Correctional Facility in Wheeler County, Georgia). Doc. 7 at 15. Hussey is a Minnesota resident and

4

QPM (possibly) is an Arizona resident.[2] *Id.* at 2. Plaintiff provides no information about John Doe. *Id.* For the moment, he has established diversity jurisdiction (involving over $75,000 in claims against citizens of *different* states).

## B. Personal Jurisdiction

Sumter must also allege sufficient facts to establish personal jurisdiction over each defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1362 (S.D. Ga. 2014). Here the case law delves in "general" versus "specific" jurisdiction distinctions. General (also known as "all-purpose") jurisdiction over a defendant is based on a forum nexus (the defendant's domicile, for example) *unrelated* to the conduct on which the

---

[2] This conclusion is not final. There's a fairly thick layer of complication that can arise out of "LCC" citizenship determinations. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, ___ F.3d ___, 2017 WL 1046103 at * 1 (11th Cir. Mar. 20, 2017) ("When determining citizenship of the parties for diversity jurisdiction purposes, a limited liability company (LLC) is a citizen of every state that any member is a citizen of. And it is common for an LLC to be a member of another LLC. Consequently, citizenship of LLCs often ends up looking like a factor tree that exponentially expands every time a member turns out to be another LLC, thereby restarting the process of identifying the members of that LLC. The simplest misstep has the potential to derail years of litigation and result in a massive financial sanction, as happened here. It is in everyone's best interest, both the litigants' and the courts', to verify that diversity jurisdiction exists before proceeding with the case. Everyone involved in this case trusted that diversity jurisdiction existed, but no one verified it.").

underlying suit is premised.³ *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115, 1122 n. 6 (2014).

Specific (case-linked) jurisdiction turns on the nexus between the forum and the underlying controversy -- the action in the forum state that subjects the actor to that state's regulation: "A," a non-Georgian, commits an intentional tort or performs a certain contract in Georgia. "A" can be haled into that state when sued on that tort or contract. Specific jurisdiction thus has been recognized

> over defendants who have purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that "envisioned continuing and

---

³ The U.S. Supreme Court has essentially created an "at home" standard -- an out-of-state defendant can endure personal jurisdiction if its general activities (not a particular tort for which it is sued) within the state is continuous enough. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 760-61 (2014). But the showing is fairly demanding. Hence,

> the affiliation between the defendant and the forum state must be so continuous and systematic that the defendant is "comparable to a domestic enterprise in that State." *Daimler*, 134 S.Ct. at 758 n. 11. Both *Daimler* and [*Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___U.S. ___, 131 S.Ct. 2846, 2851 (2011)] emphasized that the paradigm forum for the exercise of general jurisdiction is the defendant's domicile (which, in the case of a corporation, is the place of incorporation and principal place of business). *Goodyear*, 131 S.Ct. at 2853; *Daimler*, 134 S.Ct. at 760. The Supreme Court did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business. However, the court stated that a defendant might be subjected to general jurisdiction in some other forum only in an "exceptional case." *Daimler*, 134 S.Ct. at 761.

*NExTT Solutions, LLC v. XOS Technologies, Inc.*, 71 F. Supp. 3d 857, 861-62 (N.D. Ind. 2014).

> wide-reaching contacts" in the forum State, or by circulating magazines to deliberately exploit a market in the forum State. And although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State -- either by the defendant in person or through an agent, goods, mail, or some other means -- is certainly a relevant contact.

*Walden*, 134 S.Ct. at 1122 (quotes, cites and alterations omitted).

To summarize, the exercise of specific jurisdiction over, for example, an out-of-state intentional tortfeasor, must be based on intentional conduct that creates the necessary contacts with the forum. *Walden*, 134 S.Ct. at 1122-23. How many is a matter of degree: "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id*. at 1123. But the standard is spongy: "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the *necessary* contacts with the forum." *Id*. (emphasis added). "Necessary," say lower courts, means that the defendant's conduct supplies the "but-for" cause of the tort at issue. *Waite v. AII Acquisition Corp.*, 2016

WL 2346743 at *3 (S.D. Fla. May 4, 2016); *Erwin v. Ford Motor Company*, 2016 WL 7655398 at * 7 (M.D. Fla. Aug. 31, 2016).

*Walden*, by the way, demonstrates what does not make the specific-jurisdiction grade. There two airline passengers brought a *Bivens* action against a police officer, alleging that he violated their Fourth Amendment rights by seizing their gambling cash from them in Atlanta, Georgia on their return trip to Nevada. The officer (by way of a bogus forfeiture affidavit) retained their money even after concluding that it did not come from drug-related activity. *Walden*, 134 S.Ct. at 1119-20. The Nevada federal court where the plaintiffs sued him dismissed him for lack of personal jurisdiction, but the Ninth Circuit reversed: The officer had "expressly aimed his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a significant connection to Nevada." *Id*. at 1121 (quotes and cite omitted).

Reminding that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons,"[4] but any such exercise of jurisdiction must "compor[t] with the limits imposed by federal due process," *Walden*, 134 S.Ct. at 1121, the Supreme Court held that the officer lacked the minimal contacts with Nevada required for exercise of personal jurisdiction -- even if he knew that his allegedly tortious conduct in Georgia would delay the return of the money to the passengers with connections to Nevada. *Id*. The defendant officer was not subject to jurisdiction in Nevada because the Nevada resident plaintiff was the only link between him and that forum, and that was simply not enough. *Id*. at 1126. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id*. at 1123 (quotes and cite omitted). Officer Walden's contacts never went beyond that threshold. *Id*. at 1126 (his "relevant conduct occurred entirely in

---

[4] "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.' Fed. Rule of Civ. Proc. 4(k)(1)(A)." *Walden*, 134 S.Ct. at 1121.

9

Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

To summarize:

> The Court must always focus on the "'relationship among the defendant, the forum, and the litigation' [which] is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S.Ct. at 1125.

*AMA Multimedia LLC v. Sagan Limited*, 2016 WL 5946051 at *3 (D. Ariz. Oct. 13, 2016); *see also Blizzard Entertainment Inc. v. Bossland GmbH et al.*, 2017 WL 412262 at * 7 (C.D. Cal. Jan. 25, 2017) (personal jurisdiction established in California over a German company for allegedly developing and selling malicious software enabling users to cheat in some of plaintiff's computer games).

The foregoing discussion touches the general, constitutional contours guiding the personal-jurisdiction determination. But the *Walden, Daimler* and *Goodyear* cases did not disturb the obligation of

federal courts to apply state law, which therefore must be consulted here:

> To determine whether a nonresident defendant is subject to personal jurisdiction, the Court must perform a two-part analysis. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). First, the Court must determine whether the exercise of personal jurisdiction is proper under the forum state's long-arm statute as that statute would be interpreted by the state's Supreme Court. *Id.* Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Id.*; *Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945).

*Paws Holdings, LLC v. Daikin Industries, Ltd.*, 2017 WL 706624 at * 8 (S.D. Ga. Feb. 22, 2017) (footnote omitted). Georgia's long-arm statute is O.C.G.A. § 9-10-91,[5] and the Court must first resolve whether exercising jurisdiction under it violates the Due Process Clause. *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 827-28 (11th Cir. 2012). In that regard, O.C.G.A. § 9-10-91

> ["]does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal Brands, Inc.* [*v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010)].

---

[5] Sumter doesn't expressly cite to it but he is proceeding *pro se*, the Court thus must construe his Complaint liberally, *Evans v. Georgia Regional Hosp.*, ___ F.3d ___, 2017 WL 943925 at * 3 (11th Cir. Mar. 10, 2017), so O.C.G.A. § 9–10–91 is being applied.

11

> "[C]ourts [therefore] must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Id.* at 1263.

*Paws*, 2017 WL 706624 at * 17 n. 14; *see also Perrigo Company v. Merial Limited*, ___ F. Supp. 3d ___, 2016 WL 6106744 at * 7 (N.D. Ga. Oct. 6, 2016) (same). Georgia law instructs that a court in Georgia:

> may exercise personal jurisdiction over any nonresident . . . in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
> . . . .
> (2) Commits a tortious act or omission within this state . . . ;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engaged in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> . . . .

O.C.G.A. § 9-10-91.

*Byrd v. Drive Electric, LLC*, 2016 WL 3964239 at * 3 (S.D. Ga. July 20, 2016).

The Eleventh Circuit interprets and applies "Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013)

12

(quotes and cite omitted).[6] And, at this (screening) stage, the Court accepts plaintiff's factual allegations as true. *Byrd* , 2016 WL 3964239 at * 2.

Sumter alleges that Hussey committed a wide variety of malicious acts against him. *See* doc. 7 at 2 ¶ 4 (Hussey physically attacked him while in Atlanta on business); *id.* at 3-4 ¶ 6 (stalked him in Atlanta, near Sumter's apartment complex); *id.* at 5-6 (plaintiff obtained a "Temporary Protective Order" against Hussey over the stalking, and Hussey retaliated by filing a fraudulent-statements-based, "Harassment Restraining Order in his home state of Minnesota," then later sought a misdemeanor charge for violating it -- which also constitutes "an attempt to hinder Plaintiff from getting out of prison."); *id.* at 8-9 (in addition to assaulting Sumter, Hussey

---

[6] Hence, that court cited Georgia cases for some important distinctions:

> For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that -- when a defendant uses the telephone or email to contact a Georgia resident -- defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email. *See Anderson v. Deas*, 279 Ga. App. 892, 893-94, 632 S.E.2d 682 (Ga. Ct. App. 2006) (no personal jurisdiction existed over a defendant who made harassing telephone calls to a Georgia resident from another state); *Huggins v. Boyd*, 304 Ga. App. 563, 565, 697 S.E.2d 253 (Ga. Ct. App. 2010) (concluding -- based on Anderson -- that no personal jurisdiction existed over a nonresident defendant who emailed Georgia residents).

*LABMD*, 509 F. App'x at 844.

successfully triggered that Minnesota-based, misdemeanor prosecution against him); *id.* at 7 (on two occasions in 2014, Hussey hacked plaintiff's "Google Drive and Gmail accounts" and deleted data and documents "which were evidence of [Hussey] assaulting Plaintiff. This is invasion of privacy, stalking, and obstruction of justice. It is [also] an act of spoliation. . . ."); *id.* at 10 (Hussey hacked into Sumter's Facebook account and deleted his posts); *id.* at 10-11 (on two occasions Hussey hacked plaintiff's online airlines account and canceled his flight reservations); *id.* at 11 (another Facebook hack to delete a photo Sumter posted of himself -- depicting his injuries from the night Hussey physically attacked him in Atlanta); *id.* (same re: Sumter's Twitter account); *id.* at 12 (telephone harassment); *id.* (threatened his life if he sued two individuals not named in this lawsuit); *id.* at 12-13 (social media stalking); *id.* at 13-14 (Hussey "intentionally and vindictively elicited a technical violation of [Sumter's] parole for an incorrect address."); *id.* at 14 (alleging that Hussey was "negligent" for failing to take his "mood stabilizer Celexa," and that preceded the assault).

Sumter has pled personal jurisdiction over Hussey. "A tortious act occurs either where the allegedly negligent act or omission was made . . . or where the damage was sustained." *Exceptional Marketing Group, Inc. v. Jones*, 749 F.Supp.2d 1352, 1363 (N.D. Ga. 2010) (quotes and cite omitted), cited in *Paws*, 2017 WL 706624 at * 8; *see also supra* n. 6. Hussey, says Sumter, committed *intentional* acts both inside and outside Georgia, damaging Sumter inside the state. Too, plaintiff has alleged at least one actionable tort claim (civil assault and battery) against Hussey. *See, e.g., Kohler v. Van Peteghem*, 330 Ga. App. 230, 235 (2014). It is not necessary to recognize any other torts[7] -- Hussey can litigate them away when he appears -- in that the Court need only ensure that jurisdiction exists at this phase of the case.

---

[7] *See Troncalli v. Jones*, 237 Ga.App. 10, 12-13 (1999) (reversing jury verdict as to civil stalking claim because there is no cause of action for stalking simply because a criminal statute prohibits it); *see also Rock v. BAE Systems, Inc.*, 556 F. App'x. 869 (11th Cir. 2014) (discussing whether and how civil causes of action can be derived from criminal statutes), cited in *Smith v. Alphabet Inc.*, 2016 WL 3660725 at * 7 n. 7 (S.D. Ala. May 23, 2016); *see also id.* ("The CDA is a criminal statute that prohibits the making of "obscene or harassing" telecommunications. 47 U.S.C. § 223(a). Certainly a criminal statute may supply an implied right of action, but only if Congress so intended. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)."); *Shakur El-Bey v. Menefee*, 2014 WL 6633544, at *18 (M.D. Ala. Oct. 27, 2014) (collecting cases rejecting implied causes of action derived from criminal statutes); *Entwisle v. State*, 340 Ga.App. 122, 796 S.E.2d 743, 749-50 ( 2017) (discussing evidence needed to support a criminal invasion of privacy conviction); O.C.G.A. § 16-9-93(c)).

However, Sumter has pled no claim over QPM because he has failed to allege that Hussey was acting within the scope of his employment when Hussey committed the various alleged acts against him. It is not enough to claim that Hussey simply came to town on his employer's dime. *See, e.g., Corrugated Replacements, Inc. v. Johnson*, ___ Ga. App. ___, 2017 WL 715963 at * 2 (Feb. 23, 2017) (driver's employer was not liable for death of passenger of van arising out of collision with truck and for injuries sustained by other passengers, based on theory of *respondeat superior*, even though truck was owned by employer, where driver was not acting within course and scope of employment at time of accident, but was engaged in purely personal activity); *Ahmed v. Air France-KLM*, 165 F.Supp.3d 1302, 1310 (N.D. Ga. 2016) (employer could not be held liable on *respondeat superior* theory under Georgia law for employee's alleged fraud, false imprisonment, and infliction of emotional distress on airline passengers of Somali descent, as such actions were purely personal in nature, unrelated to employee's duties, and were therefore outside the scope of employment because they were not in furtherance of employer's business; employee's discrimination, demanding of bribes, and acts preventing passengers

from boarding their flights to the United States were solely for his own benefit).

Hence, QPM faces dismissal from this case on the merits, if not for lack of personal jurisdiction -- though for the moment the Court defers formal ruling on this point. Meanwhile, since Sumter makes *no* allegations of any kind against Doe, Doe also faces dismissal (and if Sumter subsequently amends to add him as a party, he would have to allege sufficient facts to establish a cause of action and jurisdiction).

**C. Venue**

"Finally, while personal jurisdiction is assessed with regard to the forum state, venue focuses on the federal districts in which litigants reside or in which events underlying the claims took place." 14D FED. PRAC. & PROC. JURIS. § 3801 (4th ed. Jan. 2017). In that regard,

> [c]ourts routinely observe that venue doctrine is "primarily a matter of choosing a convenient forum." The principal focus of a venue inquiry is the "convenience of litigants and witnesses." Courts evince greater concern with the litigant who has not chosen the forum than with the litigant who has. Thus, "[i]n most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." On the other hand, if venue is proper, the plaintiff's choice of forum is entitled to some deference, and transfer to another district under 28 U.S.C.A. § 1404(a) will be ordered only if the defendant demonstrates that the convenience of

the parties and the witnesses, and the interest of justice, strongly favor transfer.

*Id.* (footnotes omitted).

While "federal courts generally apply state statutes in ruling on personal jurisdiction, federal law governs questions of federal-court venue." 14D FED. PRAC. & PROC. JURIS. § 3801. Also, "even when a statute indicates that venue is proper wherever the defendant is subject to personal jurisdiction, many federal courts have concluded that the defendant must have minimum contacts with the district in which venue is laid, and that venue cannot be based solely on a provision allowing national service of process." *Id.* The venue statute (28 U.S.C. § 1391(b)) otherwise "permits the plaintiff to lay venue in 'any civil action' either in the district in which the defendant resides or the district where a substantial part of the claim arose." *Id.* § 3808; *see also Avent v. Pirrello*, 2017 WL 1062372 at * 5 (N.D. Ga. Mar. 20, 2017) ("the venue analysis must focus on the Defendant's actions and omissions.").

Sumter evidently chose this Court because he is incarcerated within the Southern District of Georgia. But, apparently, all of the alleged events evidently transpired in the Northern District, which Hussey presumably would find more convenient. Hence, the Clerk is

**DIRECTED** to **TRANSFER** this case to the Northern District of Georgia, which can rule on whether QPM and Doe should be dismissed.[8]

## II. FILING FEE

Sumter must pay the $350 filing fee for this case. His PLRA paperwork (doc. 6) supports a $50.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore remit the $50.00 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Northern District of Georgia's Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, this Court's Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this

---

[8] In the meantime, nothing is preventing Sumter from filing with that district, within 14 days of the date of this Order, any additional pleadings and briefs in support of this case).

Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

## III. CONCLUSION

The Court has subject matter and personal jurisdiction over defendant Creighton Hussey, and defendants Quality Project Management, LLC and John Doe warrant dismissal, but ruling on them is deferred to the Northern District of Georgia, to which this case is **TRANSFERRED** on venue grounds. Meanwhile plaintiff's fee-payment obligations (as noted above) will be processed by the Clerk for the Northern District of Georgia.

**SO ORDERED**, this 14th day of April, 2017.

*/s/ JB Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA